# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE RAMOS CARRILLO,<br><br>　　　Plaintiff,<br><br>　v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,<br><br>　　　Defendant.<br>_____/ | Case No. 1:21-cv-01211-SKO<br><br>ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(Doc. 1) |

## I.    INTRODUCTION

Plaintiff Jose Ramos Carrillo ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying his applications for disability insurance benefits ("DIB") and Supplemental Security Income (SSI) under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

## II.    BACKGROUND

Plaintiff was born on March 23, 1979, and has at least a high school education. (Administrative Record ("AR") 23, 38, 70, 81, 94, 108, 227, 232.) On January 7, 2020, Plaintiff protectively filed claims for DIB and SSI payments, alleging disability beginning on April 14,

---

[1] The parties have consented to the jurisdiction of the U.S. Magistrate Judge. (*See* Doc. 8.)

2017, due to knee surgeries, right hand nerve pain damage, and back pain. (AR 15, 71, 82, 95, 109, 231.)

**A.    Relevant Evidence of Record[2]**

In October 2015, Plaintiff was diagnosed with complex regional pain syndrome (CRPS) in his right upper extremity. (AR 589–90, 608, 869.) Plaintiff underwent the implantation of a spinal cord stimulator to treat his CRPS in April 2017. (AR 581–88.) The next month, Plaintiff presented for a follow-up appointment and reported "doing very well" and "more functional," with his "[right upper extremity] symptoms practically resolved." (AR 565, 868.)

In February 2020, Plaintiff complained of a recurrence of right upper extremity pain and changes in the skin color of his hands. (AR 511–12, 884.) Normal pulses and sensations were noted in Plaintiff's right arm. (AR 513, 885.) He was referred to a neurologist for his right upper extremity pain. (AR 513, 886.) In March 2020, Plaintiff was assessed with "[o]ther infective (teno)synovitis" in his right hand. (AR 668, 855.)

Plaintiff presented to a neurologist in August 2020, complaining of pain in his arms and hands with numbness and tingling. (AR 1680.) Electromyography (EMG) and nerve conduction studies of both upper extremities were normal. (AR 1680–81.) Later that same month, Plaintiff presented to his primary physician to request a different neurologist. (AR 1660.) He was referred to a pain management specialist for his chronic right upper extremity pain. (AR 1660–62.)

In October 2020, Plaintiff complained of neck pain that radiated to his shoulder and arms. (AR 2345.) He reported pain, tingling, loss of sensation, burning, freezing, and weakness in his hands. (AR 2345.) Upon physical examination, Plaintiff had abnormal range of motion in his cervical spine, normal motor signs in his upper extremities, abnormal sensation in his C6 and C7 dermatomes on the right side, and tenderness in his cervical paraspinals and trapezius. (AR 2348.) Plaintiff's Spurling Test was positive. (AR 2348.) He was assessed with cervical radicular pain and dorsalgia of multiple sites in his spine. (AR 2348–49.) In December 2020, Plaintiff presented for physical therapy and endorsed upper extremity pain, spasms, numbness, and tingling. (AR

---

[2] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

2

2331, 2333.) The therapist assessed Plaintiff with the "deficits" of pain, tone/spasms, range of motion, posture, and strength. (AR 2331, 2333.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's application for benefits initially on May 27, 2020, and again on reconsideration on July 16, 2020. (AR 15, 129–40.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 144–45.) The ALJ conducted a hearing on December 28, 2020. (AR 32–69.) Plaintiff appeared at the hearing with his attorney and testified as to his alleged disabling conditions. (AR 38–61.)

**1.     Plaintiff's Testimony**

Plaintiff testified that he still has pain in his right arm following the implantation of the spinal cord stimulator and that he has between 50 and 60 percent mobility in his right hand. (AR 38.) He described the pain as sharp and radiating through his fingers to his neck. (AR 39.) He also has a loss of sensation in his right hand and a lack of movement: "it feels like it's dying." (AR 39, 40.) According to Plaintiff, his right hand "gets really cold at times" and gets swollen. (AR 39.) He testified that he is going to start with a new treatment providers, LAGS Medical Center, and is awaiting approval for an MRI to determine the course of treatment. (AR 40, 48, 53.) Plaintiff also testified that he has neck pain that radiates to his right hand and fingers. (AR 49.)

According to Plaintiff, he cannot lift his youngest daughter, who weighs "about 37, 40 pounds." (AR 41–42.) He also did not pick her up as a newborn, due to a lack of strength in his hand: "I was afraid that I was going to drop her." (AR 42.) He testified he cannot lift more than 10 pounds, and if he does, he starts "leaning" and drops what he is carrying because his "hand will not allow it." (AR 54.) According to Plaintiff, he must go slowly when dressing or bathing, and has difficulty shaving due to his hand shaking. (AR 54.) He also has difficulty grabbing things from kitchen counters and can cook only small meals. (AR 55.)

**2.     The VE's Testimony**

A VE also testified at the hearing. (AR 61–68.) The VE testified that Plaintiff had past relevant work as a cashier, Dictionary of Operational Titles ("DOT") code 211.462-010, with a

light exertional level and a specific vocational preparation (SVP)[3] of s. (AR 62.) The ALJ asked the VE a hypothetical question in which the VE was to consider a person of Plaintiff's age, education, and work experience, who is limited to the light exertional level and with the following additional limitations: occasional balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs; should never climb ladders, ropes, or scaffolds; should never perform work tasks in loud noise environments; should never perform work tasks involving exposure to concentrated pulmonary irritants, such as dust, fumes, odors, and gases; frequent use of the dominant right upper extremities for pushing, pulling, gross handling and fine fingering. (AR 62–63.) The VE testified that such a person could perform Plaintiff's past relevant work. (AR 63.)

In a second hypothetical, the VE was asked by the ALJ to consider the same person as in the first, but who was limited to the sedentary exertional level. (AR 63.) The VE testified that such a person could not perform Plaintiff's past relevant work. (AR 63.) The VE further testified that such a person could perform other, sedentary positions under the DOT in the national economy, such as an information clerk, DOT code 237.367-046 and SVP 2; an inspector, DOT code 739.687-182 and SVP 2; and an address clerk, DOT code 209.587-010 and SVP 2. (AR 63.)

In a third hypothetical, the VE was asked by the ALJ to consider the same person as in the first, but with the additional limitation that the individual could never squat or kneel. (AR 64.) The VE testified that such a person could perform Plaintiff's past work per the DOT but not as actually performed. (AR 64–66.) In a fourth hypothetical, the VE was asked by the ALJ to consider the same person as in the second, but with the additional limitation that the individual could never squat or kneel. (AR 646.) The VE testified that such limitation would have no impact upon the sedentary occupations. (AR 66.)

In a fifth hypothetical, the VE was asked by the ALJ to consider the same person as in the

---

[3] Specific vocational preparation, as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702 (1991). Jobs in the DOT are assigned SVP levels ranging from 1 (the lowest level – "short demonstration only") to 9 (the highest level – over 10 years of preparation). *Id*.

second , but with the additional limitation of occasional use of the dominant right upper extremity for pushing, pulling, gross handling, and fine fingering.  (AR 66.)  The VE testified there would be no work such a person could perform.  (AR 66.)  In a sixth hypothetical, the VE was asked by the ALJ to consider the same person as in the first, but with the additional limitation of occasional use of the dominant right upper extremity for pushing, pulling, gross handling, and fine fingering. (AR 66.)  The VE testified that such a person could perform the occupation of rental clerk, DOT code 295.357-018 and SVP 2.  (AR 66–67.)  If such person was limited to lifting, carrying, pushing, and pulling no more than 10 pounds, it would eliminate the rental clerk job.  (AR 67.)

Finally, the VE testified that that the maximum number of absences "typically tolerated" is one day per month but no more than 10 days per year, and no more than one day during the 90-day probationary period.  (AR 67–68.)

**C.     The ALJ's Decision**

In a decision dated January 27, 2021, the ALJ found that Plaintiff was not disabled, as defined by the Act.  (AR 15–24.)  The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. §§ 404.1520, 416.920.  (AR 17–24.)  The ALJ decided that Plaintiff met the insured status requirements of the Act through December 31, 2022, and he had not engaged in substantial gainful activity since April 14, 2017, the alleged onset date (step one).  (AR 17.)  At step two, the ALJ found Plaintiff had the following severe impairments: complex regional pain syndrome [CRPS] of the right upper extremity; right knee degenerative joint disease and internal derangement, status-post January 2018 arthroscopy; mild lumbar scoliosis; mild bilateral sensorineural hearing loss; and asthma.  (AR 17–18.)  Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three).  (AR 18.)

The ALJ then assessed Plaintiff's residual functional capacity ("RFC")[4] and applied the

---

[4] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. *See* TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8p (S.S.A. July 2, 1996).  The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments.  *Id*.  "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record including, inter alia, medical records, lay evidence, and

assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."); *see also* 20 C.F.R.§ 416.920(a)(4). The ALJ determined Plaintiff had the RFC:

> to perform sedentary work as defined in 20 [§§] CFR 404.1567(a) and 416.967(a) except he can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; [Plaintiff] can never climb ladders, ropes, or scaffolds; [Plaintiff] can never work tasks in loud noise environments; the claimant can never work tasks that would involve exposure to concentrated pulmonary irritants, such as dusts, fumes, odors, and gases; [and] [Plaintiff] is limited to no more than frequent use of the dominant right upper extremity for pushing, pulling, gross handling and fine fingering.

(AR 19–22.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms[,]" they rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence in the record . . . ." (AR 19.) The ALJ determined that Plaintiff was unable to perform his past relevant work (step 4), but he was not disabled because, given his RFC, he could perform a significant number of other jobs in the national economy, specifically information clerk, inspector, and address clerk (step 5). (AR 23.) The ALJ concluded Plaintiff was not disabled at any time from April 14, 2017, through the date of their decision. (AR 24.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on June 17, 2021. (AR 1–6.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 416.1481.

### III. LEGAL STANDARD

**A.  Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

---

'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that he is not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520); *see also* 20 C.F.R. § 416.920. The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see, e.g.*, 20 C.F.R. § 416.920(a)(4) (providing the "five-step sequential evaluation process" for SSI claimants). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520); 20 C.F.R. § 416.920.

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work." *Id.* (citing *Swenson*, 876 F.2d at 687).

**B.   Scope of Review**

"This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in

7

the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  *See also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review . . . ." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund*, 253 F.3d at 1156 ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.   DISCUSSION

Plaintiff contends the ALJ erred by failing to properly analyze Plaintiff's complex regional pain syndrome ("CRPS") of his right upper extremity pursuant to Social Security Rulings ("SSR")

96-8p and 03-2p. (Doc. 14 at 13–15.) Plaintiff more specifically asserts the ALJ failed to consider properly the medical evidence and Plaintiff's subjective statements of record and testimony in assessing Plaintiff's RFC with respect to his CRPS. (*Id*. at 14–15.) Plaintiff contends the ALJ did not reference SSR 03-2p in its decision, and did not follow that SSR in evaluating the evidence at issue. (*Id*. at 14.)

## A.  Applicable Standard

In the specific context of a claimant who is found to have CRPS, the Commissioner has issued a ruling for evaluating disability claims based on those disorders. *See* TITLES II AND XVI: EVALUATING CASES INVOLVING REFLEX SYMPATHETIC DYSTROPHY SYNDROME/COMPLEX REGIONAL PAIN SYNDROME, SSR 03-2p, 2003 WL 22399117 (S.S.A. Oct. 20, 2003).[5] CRPS is a chronic pain syndrome "often resulting from trauma to a single extremity." *Id*. at *1. Its primary characteristic "is a 'continuous, intense pain out of proportion to the severity of the injury, which becomes worse rather than better over time.'" *Hunt v. Astrue*, No. EDCV 08–00299–MAN, 2009 WL 1519543, at *4 (C.D. Cal. May 29, 2009) (quoting *National Institutes of Health, National Institute of Neurological Disorders and Stroke Complex Regional Pain Syndrome Information Page*, http://www.ninds.nih.gov/disorders/reflex-sympathetic-dystrophy); *see* SSR 03-2p at * 1 ("It is characteristic of [CRPS] that the degree of pain reported is out of proportion to the severity of the injury sustained by the individual."). The signs of the disorder are not always "present continuously," and "[t]ransient findings are characteristic of CRPS[.]" SSR 03-2p at *4. In determining the RFC of an individual who has CRPS, "all of the individual's symptoms must be considered in deciding how such symptoms may affect functional capacities" and "[c]areful consideration must be given to the effects of pain and its treatment on an individual's capacity to do work-related and continuous basis." *Id.* at *7.

## B.  Analysis

In finding Plaintiff maintained the ability to use frequently his dominant right upper

---

[5] Social Security Rulings are issued by the Commissioner to clarify the Commissioner's regulations and policies. *Bunnell v. Sullivan*, 947 F.2d 341, 346 n. 3 (9th Cir. 1991). Although they do not have the force of law, they are nevertheless given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." *Han v. Bowen*, 882 F.2d 1453, 1457 (9th Cir. 1989); *see Orn v. Astrue*, 495 F.3d 625, 636 (9th Cir. 2007) (Social Security Rulings are "binding on all components of the Social Security Administration, . . . and are to be relied upon as precedents in adjudicating cases.").

extremity to perform pushing, pulling, gross handling, and fine fingering (*see* AR 19), the ALJ stated that "[a]s as recent as December 2020[,] [Plaintiff] denied weakness and was found to have normal motor strength and sensory," citing AR 2345. (AR 21.) CRPS, however, does not require impaired motor strength. *See Deborah M. v. Berryhill*, No. 19-CV-01901-DMR, 2020 WL 7625483, at *5 (N.D. Cal. Dec. 22, 2020) (ALJ's assessment of CRPS did not comport with SSR 03-2p despite unremarkable findings regarding motor strength). In any event, the record here did contain some evidence of impaired motor strength (*see* AR 2331, 2333), which is consistent with the Commissioner's observation that the signs of the disorder are not always "present continuously" and "[t]ransient findings are characteristic of . . . CRPS[.]" *See* SSR 03-2p at *4. Moreover, AR 2345 is a medical record dated ***October*** 2020, and shows not only that Plaintiff ***endorsed*** weakness, but that he had ***abnormal*** sensation in his C6 and C7 dermatomes on the right side. (AR 2348.)

The ALJ's RFC assessment also relied on Plaintiff's report in May 2017 that he was "doing very well" following the implantation of a spinal cord stimulator (AR 20 (citing AR 565)) and the normal EMG testing results of Plaintiff's upper extremities in mid-August 2020 (AR 20 (citing AR 1680)). But later medical records—not discussed by the ALJ—undermine the ALJ's reliance on these two pieces of evidence. For instance, in February 2020, Plaintiff experienced a recurrence of right upper extremity pain and was referred to a neurologist. (AR 511–12, 884.) Plaintiff was assessed with "[o]ther infective (teno)synovitis" in his right hand in March 2020. (AR 668, 855.) In late August 2020, ***after*** normal EMG testing, Plaintiff was referred to a pain management specialist for his chronic right upper extremity pain. (AR 1660–62.) Plaintiff complained of neck pain that radiated to his shoulder and arms in October 2020, and a physical examination showed he had abnormal range of motion in his cervical spine, abnormal on the right side, tenderness in his cervical paraspinals and trapezius, and a positive Spurling Test. (AR 2348.) He was assessed with cervical radicular pain. (AR 2348–49.) In December 2020, Plaintiff presented for physical therapy for upper extremity pain, spasms, numbness, and tingling, and he was assessed by the therapist with the "deficits" of pain, tone/spasms, range of motion, posture, and strength. (AR 2331, 2333.)

Finally, the ALJ also repeatedly observed a "lack of support" in the record for an "inability to perform fine and gross movements effectively." (AR 18. *See also* AR 20 ("[T]he record is

conspicuously absent focal or neurological deficits, such as loss of motor strength, sensory, . . . or manipulative ability/dexterity.").) This finding too is inaccurate, as it fails to account for the records discussed above, namely, Plaintiff's March 2020 diagnosis of "[o]ther infective (teno)synovitis" in his right hand (AR 668, 855), the physical examination in October 2020 showing abnormal sensation on his right side (AR 2348), and the determination by his physical therapist in December 2020 that he had deficient motor strength (AR 2331, 2333).

Considering the foregoing, the Court concludes that the ALJ's RFC assessment with respect to Plaintiff's ability to use frequently his dominant right upper extremity to perform pushing, pulling, gross handling, and fine fingering (*see* AR 19) ignored substantial record evidence of limitations to Plaintiff's upper extremities due to CRPS. Instead, it appears to be based on a mischaracterization of the record and cherry-picking of only those (few) records reflecting normal clinical findings. As such, the evaluation did not comport with the guidelines set forth in SSR 03-2p and was erroneous.[6] *See Pettingill v. Saul,* No. 2:18-CV-2979-EFB, 2020 WL 2404616, at *6 (E.D. Cal. May 12, 2020) (finding the ALJ erred in failing to evaluate the plaintiff's CRPS under SSR 03-2p where the evaluation was "based on cherry-picking only notations reflecting a positive response to medication" while "ignor[ing] the portions of the same medical records reflecting ongoing pain that impaired plaintiff's ability to perform daily activities"); *Parks v. Berryhill*, No. 1:15-CV-01603-BAM, 2017 WL 908616, at *7 (E.D. Cal. Mar. 8, 2017) ("[I]t was error for the ALJ to ignore the [] CRPS diagnos[is] and the objective evidence supporting them in light of SSR 03–02p.") (citing *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (An ALJ may not "ignore competent evidence in the record" in order to justify his conclusion)). *See also Taffy D. v. Comm'r of Soc. Sec.*, No. C21-5146-MLP, 2021 WL 4988717, at *3 (W.D. Wash. Oct. 27, 2021); ("[N]ormal lower extremity strength and sensation . . . is not inconsistent with CRPS per SSR 03-2p, as objective findings of CRPS are of a 'transitory nature.'") (quoting SSR 03-2p at *4–5)); *Deborah M.*, 2020 WL 7625483, at *6 ("Because clinical findings are of limited value with respect to CRPS, SSR 03-2p emphasizes that the severity of the disorder can be assessed instead through

---

[6] As SSR 03-2p is not mentioned in the decision, one could infer the ALJ did not consult it for guidance in adjudicating Plaintiff's claims. The failure alone to cite SSR 03-2p, however, is not error. *See Alexander v. Astrue*, No. CV11-02465-PHX-DGC, 2012 WL 2848154, at *5 (D. Ariz. July 11, 2012).

11

'a longitudinal clinical record containing detailed medical observations, treatment, the individual's response to treatment, complications of treatment, and a detailed description of how the impairment limits the individual's ability to function and perform or sustain work activity over time.'") (quoting SSR 03-2p at *5)); *Hunt*, 2009 WL 1519543, at *5 (noting that "CRPS is a disease diagnosed primarily based on subjective complaints" and may not necessarily be supported by evidence such as x-rays or laboratory tests).

The error was not harmless because it was not "inconsequential to the ultimate nondisability determination." *Tommasetti*, 533 F.3d at 1038. If, after evaluating Plaintiff's ability to function in accordance SSR 03-2p, the ALJ assesses more restrictive RFC due to Plaintiff's right upper extremity CRPS, such would influence the ultimate nondisability determination (*see* AR 66 (testimony by the VE that a limitation of occasional use of the dominant right upper extremity for pushing, pulling, gross handling, and fine fingering would result in no work available to Plaintiff)). *See Saffaie v. Berryhill*, 721 F. App'x 709, 710 (9th Cir. 2018) ("The ALJ's failure to analyze [the claimant's] CRPS diagnosis in accordance with SSR 03-02p was not a harmless error.").

**C.     Remand**

Where the ALJ commits an error and that error is not harmless, the "ordinary . . . rule" is "to remand to the agency for additional investigation or explanation." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1099 (9th Circ. 2014) (citations omitted). The Ninth Circuit recognized a limited exception to this typical course where courts "remand[] for an award of benefits instead of further proceedings." *Id*. at 1100–01 (citations omitted); *see also id*. at 1100 (noting that this exception is "sometimes referred to as the 'credit-as-true' rule"). In determining whether to apply this exception to the "ordinary remand rule," the court must determine, in part, whether (1) "the record has been fully developed;" (2) "there are outstanding issues that must be resolved before a determination of disability can be made;" and (3) "further administrative proceedings would be useful." *Id*. at 1101 (citations omitted). As to the last inquiry, additional "[a]dministrative proceedings are generally useful where the record has not been fully developed, there is a need to resolve conflicts and ambiguities, or the presentation of further evidence . . . may well prove enlightening in light of the passage of time." *Id*. (citations omitted). Ultimately, "[t]he decision

12

1 whether to remand a case for additional evidence or simply to award benefits is in [the court's]
2 discretion." *Swenson*, 876 F.2d at 689 (citation omitted).

3       The Court finds that the "credit-as-true" exception to the "ordinary remand rule" is
4 inapplicable in this case because additional administrative proceedings would be useful.[7] *See, e.g.,*
5 *Pettingill*, 2020 WL 2404616, at *7 (remanding "for proper consideration of plaintiff's CRPS in
6 accordance with SSR 03-2p"). On remand, the ALJ is directed to evaluate Plaintiff's CRPS with
7 the guidance of SSR 03-2p and to reassess Plaintiff's RFC, including all of his relevant limitations.[8]

### V. CONCLUSION AND ORDER

9       Based on the foregoing, the Court finds that the ALJ's decision is not supported by
10 substantial evidence and is, therefore, VACATED and the case REMANDED to the ALJ for further
11 proceedings consistent with this Order.

12       The Clerk of Court is DIRECTED to enter judgment in favor of Plaintiff Jose Ramos
13 Carrillo and against Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:  **January 7, 2023**                 /s/ *Sheila K. Oberto*
                                                             UNITED STATES MAGISTRATE JUDGE

---

[7] Plaintiff concedes that further administrative proceedings are appropriate in this case. (*See* Doc. 14 at 17.)

[8] As the Court finds that remand for further proceedings is appropriate for the ALJ to re-assess Plaintiff's RFC in light of SSR 03-2p, the Court does not reach Plaintiff's additional assertions of error regarding the ALJ's evaluation of the medical evidence in accordance with SSR 96-8p and treatment of Plaintiff's subjective testimony (*see* Doc. 14 at 15–17). *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted . . . .").